1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROGER STOKELY,** ) | **1: 01 CV 6030 LJO WMW HC** |
| ) | |
| **Petitioner,** ) | **FINDINGS AND** |
| ) | **RECOMMENDATIONS RE** |
| **v.** ) | **PETITION FOR WRIT OF** |
| ) | **HABEAS CORPUS** |
| ) | |
| **JOE McGRATH, Warden,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |
| _____ ) | |

Petitioner is a state prisoner proceeding with counsel on a petition for writ of habeas corpus pursuant to 28 U.S.C. Section 2254.

**PROCEDURAL HISTORY**

On November 8, 1995, Petitioner pled guilty to engaging in three or more substantial sexual assault. The trial court sentenced Petitioner to six years in state prison.

On June 6, 1996, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District ("Court of Appeal"). On July 3, 1996, the Court of Appeal denied the petition.

On July 17, 2000, Petitioner filed a petition for writ of habeas corpus in the Stanislaus County Superior Court.  On July 18, 2000, the Superior Court denied the petition.

On September 5, 2000, Petitioner filed another petition for writ of habeas corpus in the Court of Appeal.   The Court of Appeal denied the petition on September 25, 2000.

On October 23, 2000, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court.  The court denied the petition as untimely on March 28, 2001.  On February 19, 2002, Petitioner filed another petition for writ of habeas corpus in the California Supreme Court.  The court denied the petition on June 12, 2002.

Petitioner filed the present petition for writ of habeas corpus on July 24, 2001.  On June 26, 2002, Respondent filed a motion to dismiss the petition on the ground that it was barred by the applicable one-year statute of limitations set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996.  Petitioner opposed the motion.  On October 3, 2002, the Magistrate Judge recommended that Respondent's motion to dismiss be granted and that the petition be dismissed.  The Magistrate Judge found that the statute of limitations ran on May 22, 1997, and that Petitioner was not entitled to tolling during the four-year gap between his first and second state collateral actions, which was the time period between July 3, 1996, and July 17, 2000.  The Magistrate Judge also determined Petitioner was not entitled to equitable tolling because he simply alleged the delay was due to medical reasons without showing that any mental problems rendered him unable to file a timely habeas petition.  The court noted that Petitioner did not "describe his condition, nor does he provide the dates during which he was affected by his condition."

On October 28, 2002, Petitioner filed objections to the Magistrate Judge's findings and recommendation.  Attached to the objections was a psychological report dated September 16, 1996.  After a de novo review of the case, the District Judge adopted the findings and recommendations and granted Respondent's motion to dismiss on December 16, 2002.

2

1    Petitioner appealed to the Ninth Circuit.  On September 10, 2004,  the parties made a

2    joint motion for summary reversal of the District Judge's order dismissing the petition.  The

3    government stipulated to a remand of the case based on the decision in Laws v. LaMarque,

4    351 F.3d 919 (9th Cir. 2003), which was decided after the District Court entered judgment in

5    this case.  Pursuant to the parties' joint motion, the Ninth Circuit reversed and remanded the

6    case.  The case was remanded "for further factual development and, if appropriate, an

7    evidentiary hearing on whether appellant  is entitled to equitable tolling."

8    Counsel was appointed on remand.  On December 8, 2004, this court ordered

9    supplemental briefing addressing the issue of whether a need existed for an evidentiary

10   hearing on whether Petitioner was entitled to equitable tolling.   After being granted two

11   extensions of time, Petitioner filed his supplemental memorandum on August 1, 2005.

12   Respondent filed his response to Petitioner's supplemental memorandum on September 29,

13   2005, to which Petitioner filed a reply on October 7, 2005.

14   On February 8, 2006, the Magistrate Judge entered an order, first summarizing the

15   parties' arguments and then finding in part as follows:

16          In his reply to Respondent's supplemental brief, Petitioner argues that in light
       of the evidence of the 1996 psychological report and the mental health records in the
17     Central File, Petitioner "should not be barred .   .   .   from a Status Conference to
       determine whether further factual development (subpoenaing of other records,
18     appointment of psychiatrists, etc.) is necessary, or, if appropriate, evidentiary
       hearing."
19          The court finds that in requesting a status conference to determine whether
       additional factual development is necessary and whether an evidentiary hearing
20     should be held, Petitioner ignores the directive of this court in regard to the purpose
       of the supplemental briefing.  The parties were ordered to submit briefs " addressing
21     the issue of whether a need exists for an evidentiary hearing on whether Petitioner is
       entitled to equitable tolling."  No mention of a subsequent status conference was
22     made by the court.  Thus, any arguments that Petitioner has in support of a need for
       an evidentiary hearing were to be made in his supplemental brief, not later.  The
23     purpose of an evidentiary hearing is to resolve the merits of a factual dispute.
       Petitioner presents no arguments in his supplemental brief regarding what
24     information could be gleaned regarding his alleged mental incompetence through an
       evidentiary hearing.  He simply asks for a status conference to determine whether
25     further factual development and an evidentiary hearing are necessary.
              The court has already given Petitioner an opportunity, through the
26     supplemental briefing, to demonstrate why an evidentiary hearing is needed in this
       case. Petitioner has not done so.  It is the role of Petitioner's counsel, not the court,

27

28                                                   3

1    to propose specific factual development to support his claim.  Accordingly, the court
     finds no basis for an evidentiary hearing, and will not order one.

2          Petitioner expressly submits his arguments regarding the 1996 psychological
     report and Petitioner's Central File and "further factual development" in this case.

3    He does not, however, explain what other factual development he would like to
     pursue or how it is necessary to the court's understanding of this case.  The court

4    finds that the parties have essentially agreed that under Laws v. LaMarque, Petitioner
     has made the initial showing regarding an impediment under § 2254(d)(1)(B) such

5    that further factual development was required.  Petitioner has now had the
     opportunity to develop the facts and has done so by lodging a series of documents

6    with the court from his Central File.  Petitioner, however, presents no specific
     arguments regarding the contents of these documents.  The burden of demonstrating

7    that extraordinary circumstances exist such as would justify equitable tolling lies with
     the petitioner.  Marolf, 173 F.3d at 1218 n. 3.  While the court's prior order directed

8    the parties to address the issue of an evidentiary hearing, it did not direct the parties
     to address the merits of Petitioner's claim regarding equitable tolling.  It appears that

9    Petitioner's counsel may not yet have fully presented the court with his arguments
     regarding the claim.  Therefore, out of an abundance of caution, the court will give

10   the parties a final opportunity to address the issue of equitable tolling.

11         Petitioner filed his supplemental brief on May 9, 2006, and Respondent filed his

12   response on June 8, 2006.  In his response, Respondent asked the court to resolve the petition

13   on the merits, without deciding the equitable tolling issue.  Respondent did not concede that

14   Petitioner was entitled to equitable tolling and specifically reserved the right to litigate this

15   issue, if necessary, at a later time.  Rather, Respondent opined that rather than litigate the

16   complex issue of Petitioner's competency, it would be more expeditious to simply resolve

17   the petition on the merits. Petitioner did not respond to that request.  Accordingly, on

18   February 6, 2007, the court entered an order stating in part that "[i]n order to properly

19   determine whether this court may address the merits of the present petition without

20   addressing the equitable tolling issue, this court must examine Respondent's response to the

21   merits of the petition."   The court ordered Respondent to file an answer to the petition and

22   granted Petitioner the opportunity to file a traverse.  Respondent filed his response on March

23   22, 2007, and Petitioner filed his traverse on April 20, 2007.

24                              **LEGAL STANDARD**

25   JURISDICTION

26         Relief by way of a petition for writ of habeas corpus extends to a person in custody

27

28                                          4

1    pursuant to the judgment of a state court if the custody is in violation of the Constitution or

2    laws or treaties of the United States.  28 U.S.C. § 2254(a);  28 U.S.C. § 2241(c)(3);  Williams

3    v. Taylor, 120 S.Ct. 1495, 1504 fn.7 (2000).  Petitioner asserts that he suffered violations of

4    his rights as guaranteed by the United States Constitution.  In addition, the conviction

5    challenged arises out of the Stanislaus County Superior Court, which is located within the

6    jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the court has

7    jurisdiction over the action.

8           On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty

9    Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after

10   its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,*

11   522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997)

12   (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107,

13   117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117

14   S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

15   The instant petition was filed on July 24, 2001, after the enactment of the AEDPA, thus it is

16   governed by its provisions.

17   STANDARD OF REVIEW

18          This court may entertain a petition for writ of habeas corpus "in behalf of a person in

19   custody pursuant to the judgment of a State court only on the ground that he is in custody in

20   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

21          The AEDPA altered the standard of review that a federal habeas court must apply

22   with respect to a state prisoner's claim that was adjudicated on the merits in state court.

23   Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for

24   habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision

25   that was contrary to, or involved an unreasonable application of, clearly established Federal

26   law, as determined by the Supreme Court of the United States;" or "resulted in a decision

27

28                                                    5

1    that was based on an unreasonable determination of the facts in light of the evidence

2    presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123

3    S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v.

4    Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

5    "A federal habeas court may not issue the writ simply because that court concludes in its

6    independent judgment that the relevant state-court decision applied clearly established

7    federal law erroneously or incorrectly." Lockyer, at 1174 (citations omitted). "Rather, that

8    application must be objectively unreasonable." Id. (citations omitted).

9         While habeas corpus relief is an important instrument to assure that individuals are

10   constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

11   (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

12   criminal conviction is the primary method for a petitioner to challenge that conviction.

13   Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the

14   state court's factual determinations must be presumed correct, and the federal court must

15   accept all factual findings made by the state court unless the petitioner can rebut "the

16   presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1);

17   Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99,

18   116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

19        A petitioner who is in state custody and wishes to collaterally challenge his

20   conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28

21   U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives

22   the state court the initial opportunity to correct the state's alleged constitutional deprivations.

23   Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991);  Rose v. Lundy,

24   455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th

25   Cir. 1988).

26        A petitioner can satisfy the exhaustion requirement by providing the highest state

27

28                                              6

1   court with a full and fair opportunity to consider each claim before presenting it to the federal

2   court.  Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88

3   F.3d 828, 829 (9th Cir. 1996).  In the present case, Respondent admits that Petitioner

4   exhausted his claims for relief.

5          When the California Supreme Court's opinion is summary in nature, this Court

6   "looks through" that decision and presumes it adopted the reasoning of the last state court to

7   have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111

8   S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through"

9   presumption that higher court agrees with lower court's reasoning where former affirms latter

10   without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000)

11   (holding federal courts look to last reasoned state court opinion in determining whether state

12   court's rejection of petitioner's claims was contrary to or an unreasonable application of

13   federal law under § 2254(d)(1)).

**DISCUSSION**

14

15   Ineffective Assistance of Counsel

16          Petitioner contends that his counsel was ineffective in advising him to accept the plea

17   bargain offered by the district attorney, on the ground that the District Attorney could use

18   Petitioner's prior "strike" to seek a doubled sentence.  Petitioner claims that counsel was

19   mistaken, and that his prior strike could not have been so used, because the alleged crime

20   occurred prior to the enactment of the Three Strikes Law on March 7, 1994.  The Stanislaus

21   County Superior Court rejected Petitioner's claim, finding that the Three Strikes law went

22   into effect prior to the time of the alleged offense

23          The law governing ineffective assistance of counsel claims is clearly established for

24   the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v.

25   Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging

26   ineffective assistance of counsel, the court must consider two factors.  Strickland v.

27

28                                               7

1   Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344,

2   346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient,

3   requiring a showing that counsel made errors so serious that he or she was not functioning as

4   the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The

5   petitioner must show that counsel's representation fell below an objective standard of

6   reasonableness, and must identify counsel's alleged acts or omissions that were not the result

7   of reasonable professional judgment considering the circumstances. Id. at 688; United States

8   v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's

9   performance is highly deferential.  A court indulges a strong presumption that counsel's

10  conduct falls within the wide range of reasonable professional assistance.  Strickland, 466

11  U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th

12  Cir.1994).

13      Second, the petitioner must demonstrate that "there is a reasonable probability that,

14  but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at

15  694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a

16  fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must evaluate

17  whether the entire trial was fundamentally unfair or unreliable because of counsel's

18  ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d

19  1356, 1461 (9th Cir. 1994).

20      This two-part standard also applies to challenges to guilty pleas based in ineffective

21  assistance of counsel.  In the context of a guilty plea, a petitioner must show that (1) his

22  counsel failed to provide reasonable competent advice, and that (2) there is a reasonable

23  probability that, but for counsel's errors, he would not have pleaded guilty and would have

24  insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366 (1985).

25      A court need not determine whether counsel's performance was deficient before

26  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

27

28                                              8

1    Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since the defendant must

2    affirmatively prove prejudice, any deficiency that does not result in prejudice must

3    necessarily fail. However, there are certain instances which are legally presumed to result in

4    prejudice, e.g., where there has been an actual or constructive denial of the assistance of

5    counsel or where the State has interfered with counsel's assistance. See Strickland, 466 U.S.

6    at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n.

7    25 (1984).

8         Ineffective assistance of counsel claims are analyzed under the "unreasonable

9    application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215

10   F.3d 1058, 1062 (2000).  "Under the 'unreasonable application' clause, a federal habeas

11   court may grant the writ if the state court identifies the correct governing legal principle from

12   [United States Supreme Court] decisions but unreasonably applies that principle to the facts

13   of the prisoner's case."  Williams, 529 U.S. at 413.  The habeas corpus applicant bears the

14   burden to show that the state court applied United States Supreme Court precedent in an

15   objectively unreasonable manner.  Price v. Vincent, 538 U.S. 634, 640 (2003).

16        In his traverse, Petitioner claims that it is unclear whether Petitioner is challenging

17   the

18   1991 strike as a violation of the Ex Post Facto clause, or whether he is claiming that the

19   underlying sexual misconduct charges relating to the present conviction occurred prior to the

20   enactment of the Three Strikes law, and thus was ineligible for application of the Three

21   Strikes Law.  The court rejects this claim, finding that the plain language in Petitioner's

22   petition indicates that he is challenging the propriety of the use of his prior 1991 conviction

23   as a strike in regard to the present case.

24        The ex post facto clause prohibits a state from enacting a law that imposes additional

25   punishment for a crime than the punishment was when the defendant committed the crime.

26   Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964 (1981).  A law violates the ex post

27

28                                              9

1   facto clause under three circumstances:  (1) when it punishes a act which was not a crime

2   when it was committed; (2)  when it makes a crime's punishment greater than when the crime

3   was committed; or (3)  when it deprives a person of a defense available at the time the crime

4   was committed.  Collins v. Youngblood, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719 (1990).  A

5   statute enhancing a defendant's sentence because the defendant is a recidivist does not punish

6   the defendant again for the prior offense.  Wittie v. United States, 515 U.S. 389, 400, 115

7   S.Ct. 2199, 2206 (1995).  Recidivist statutes have been upheld in the face of ex post facto

8   arguments even if the convictions used to enhance the sentence occurred before the recidivist

9   statute was enacted.  See,  United States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir.

10   1989) (*per curiam)*

11       Here, the strike which counsel advised  Petitioner could be used against him was a

12   1991 conviction for felony battery.  Although this prior occurred prior to 1994, the use of the

13   convictions under Three Strikes law would  not have violated the ex poste facto clause.  The

14   Ninth Circuit has held that the use of a pre-1994 strike to enhance a sentence does not violate

15   the ex post facto clause as long as the triggering offense was committed after March 1994,

16   when Three Strikes was enacted. United States v. Sorenson, 914 F.2d 173, 174 (9th Cir.1990);

17   United States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir.1984) (*per curiam*).

18   Petitioner was charged with a continuous course of illegal conduct "on or about and between

19   August 19, 1994 and August 19, 1995, which post-dates the enactment of the Three Strikes

20   Law in March of 1994.  Thus,  the use of the pre-1994 prior to enhance his sentence did not

21   violate the ex poste facto clause.  Accordingly, the court finds that Petitioner has failed to

22   carry his burden of demonstrating that the state court's decision on this issue "resulted in a

23   decision that was contrary to, or involved an unreasonable application of, clearly established

24   Federal law, as determined by the Supreme Court of the United States."

25    28 U.S.C. § 2254(d). Thus, the court concludes that this claim presents no basis for habeas

26   corpus relief.

27

28                                              10

1   Evidentiary Hearing in Superior Court

2         Petitioner contends that the Superior Court should have granted an evidentiary

3   hearing to obtain testimony from his attorney.  Petitioner notes, as Respondent

4   acknowledges, that the court's minute order contains a typo stating that the Three Strikes

5   Law went into effect in 1997, rather than 1994.  As set forth above, there is no merit to

6   Petitioner's claim that his counsel incorrectly informed him as to the possible application of

7   the Three Strikes Law to him.  Thus, Petitioner has failed to carry his burden under the

8   AEDPA and this claim presents no basis for habeas corpus relief.

9   District Attorney's Duty to Recuse Himself

10        Petitioner claims that the prosecutor should have recused himself from the case,

11  because a charge of solicitation of murder was pending against Petitioner, and the prosecutor

12  was the alleged object of the solicitation for murder.  Petitioner argues that the District

13  Attorney's Office was aware of the conspiracy and placed Petitioner under added pressure to

14  accept the plea bargain.  The Stanislaus County Superior Court rejected this claim, finding

15  that Petitioner had not adequately set forth the issue.  The Superior Court also found that

16  prior to the plea, Petitioner did not make a motion to recuse the District Attorney.

17        The facts of this case, as set forth in the Court of Appeal's January 29, 2001 opinion,

18  are as follow.  On November 8, 1995, Petitioner pled guilty to engaging in three or more

19  substantial sexual assaults.  On December 12, 1995, Detective Heyne of the Stanislaus

20  County Sheriff's Department went to the Public Safety Center to speak to Enoch Boatman,

21  who reportedly had obtained information about Petitioner wanting some witnesses and

22  Deputy District Attorney John Goold killed.   This visit took place a day or two after

23  Boatman gave authorities a pink piece of paper that Boatman represented contained the

24  names of several persons Petitioner wanted killed.  Boatman said Petitioner first approached

25  him about having these people killed around December 5th.  In addition to the witnesses,

26  Petitioner wanted the district attorney, who he thought was handling the case, "taken out."

27

28                                   11

1   On December 16, 1996, a jury found Petitioner guilty of four counts of solicitation of

2   murder.

3          As Respondent argues, this contention simply lacks merit.  Under the chronology of

4   events set forth above, the charges in the solicitation case were not pending at the time

5   Petitioner entered his plea, and the District Attorney could not have known about a murder

6   plot against him that had not yet occurred.  Accordingly, the District Attorney could not have

7   pressured Petitioner to enter a plea based on the solicitation for murder charges.

8          In his traverse to Respondent's answer, Petitioner argues that Respondent ignores the

9   fact that he returned to court in mid-November and voiced his desire to file a motion to

10  withdraw his plea.  New counsel was appointed and a motion to withdraw was filed.  This

11  motion remained pending throughout the time of the investigation into the solicitation of

12  murder charge.  Thus, Petitioner argues, the District Attorney was aware of the investigation

13  into the murder plot against Deputy District Attorney Gould at the time Petitioner's motion

14  to withdraw his plea was before the court.  Petitioner claims that Goold had a conflict of

15  interest before the hearing on the motion to withdraw the plea.  Specifically, Petitioner

16  claims that by mid-December 1995, as the alleged target of a murder plot, Gould had

17  personal reasons for securing Stokely's convictions for two "strikes"  - - felony battery and

18  molestation - - under the plea agreement; that would put Stokely in prison for life under the

19  new law if he were convicted of soliciting for murder.  Petitioner concludes that under these

20  circumstances, the Stanislaus County District Attorney had a conflict of interest in the sexual

21  molestation case, which required him to recuse himself.  He notes that the Attorney General

22  took over the prosecution of the solicitation for murder case, in recognition of the District

23  Attorney's conflict of interest in that case.

24         The court finds that Petitioner is now attempting to alter his original contention,

25  which is that the District Attorney's awareness of the solicitation for murder put extra

26  pressure on him to accept the plea bargain.  As stated above, the chronology of events

27

28                                              12

1    negates that contention.  Moreover, the court finds that Petitioner has failed to provide the

2    court with any federal authority showing that the state court's adjudication of the claim

3    "resulted in a decision that was contrary to, or involved an unreasonable application of,

4    clearly established Federal law, as determined by the Supreme Court of the United States;"

5    or "resulted in a decision that was based on an unreasonable determination of the facts in

6    light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  That is,

7    Petitioner has not provided any federal law showing that the District Attorney's failure to sua

8    sponte recuse himself from the sexual molestation case during the pendency of the motion to

9    withdraw the plea deprived Petitioner of due process.  Although Petitioner quotes language

10   regarding the need for prosecutorial impartiality from  Berger v. United States, 295 U.S. 78,

11   88 (1935), that case is readily distinguishable.  Berger  involved misconduct on the part of

12   the prosecutor which was "pronounced and persistent, with a probable cumulative effect

13   upon the jury which cannot be disregarded as inconsequential" such that a new trial was

14   ordered. Id.  No such conduct is alleged in this case.

15           Accordingly, the court finds that this contention provides no basis for habeas corpus

16   relief.

17           Based on the foregoing, IT IS HEREBY RECOMMENDED as follows:

18   1)      that the petition for writ of habeas corpus be DENIED;

19   2)      that the Clerk's Office be directed to enter judgment for Respondent and to close this

20           case.

21

22           These Findings and Recommendation are submitted to the assigned United States

23   District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule

24   72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

25   California.  Within thirty (30) days after being served with a copy, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be

27

28                                            13

1  captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the

2  objections shall be served and filed within ten (10) court days (plus three days if served by

3  mail) after service of the objections.  The court will then review the Magistrate Judge's

4  ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file

5  objections within the specified time may waive the right to appeal the District Court's order.

6  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7  IT IS SO ORDERED.

8  **Dated:    October 25, 2007**                        **/s/  William M. Wunderlich**
                                                         UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                14